UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 24-CR-396 SEP |
| | ) |
| VENERA ISABELLE DUMITRU, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Venera Isabelle Dumitru, represented by defense counsel Tara Crane, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the charge, the Government agrees to move for the dismissal as to the defendant of Counts 2 and 3 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to the

1

defendant's identity theft and bank fraud during the time frame alleged in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 1 to forfeit to the United States all property subject to forfeiture under the applicable statute(s).

### 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, in or before January 2024, two or more people reached an agreement to commit the crime of bank fraud;

**Two**, the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;

**Three**, at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement;

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning no later than in or around January 2024, and continuing through at least in or around June 2024, in the Eastern District of Missouri and elsewhere, the defendants, including defendant Venera Isabelle Dumitru ("DUMITRU") entered an agreement to steal banking account information from victims through the use of skimming devices unlawfully installed on automatic teller machines (ATMs); and, to present the illegally obtained account information to banks or retailers for purposes of fraudulently obtaining money under the custody and control of financial institutions.

The manner and means of the scheme and conspiracy to commit bank fraud were as follows:

It was part of the conspiracy that in or around January 2024, co-defendants MIHAI VLAICU ("VLAICU") and MIHAI FLORIN MARINESCU ("MARINESCU") covertly placed illegal skimming devices on at least two ATMs servicing customers of Simmons Bank, including the ATMs located at 10301 Clayton Road in Frontenac, Missouri, within the Eastern District of Missouri, and at 8151 Clayton Road, Clayton, Missouri, within the Eastern District of Missouri. Such skimming devices record the bank account information and PIN numbers of legitimate banking customers.

VLAICU and MARINESCU thereby successfully derived the private banking account information of victims, including victims D.P., B.B., D.E., T.D., N.N, and T.H.

VLAICU and MARINESCU, and/or their co-conspirators, attempted or completed fraudulent withdrawals by "cloning" the aforementioned victims' stolen banking account

3

information (that is, copying and imposing the banking account information) onto gift cards with electromagnetic strips, obtained and utilized by VLAICU and MARINESCU, and/or their co-conspirators, for this purpose.

VLAICU and MARINESCU, and/or their co-conspirators, then used these "cloned" cards to withdraw (or to attempt to withdraw) from ATMs money in the custody or under the control of Simmons Bank on various dates in and around January 2024.

On or about April 15, April 16, April 17, April 18, and April 19, 2024, DUMITRU and co-defendant LAURENTIU MIGUEL IVAN ("IVAN") used cloned cards bearing account information belonging to victims P.S. and W.E. to attempt to withdraw cash from ATMs at Walgreens stores in the City of St. Louis, within the Eastern District of Missouri. The total value of these withdrawals was at least $1,421 as to withdrawals by IVAN, and $1,070.50 as to withdrawals by DUMITRU.

On or about April 25, 2024, IVAN and DUMITRU utilized multiple stolen account numbers to attempt to withdraw cash from an ATM in St. Louis County, within the Eastern District of Missouri, including from an account and using an account number belonging to victim D.M. On or about April 30, 2024, VLAICU utilized multiple stolen account numbers to attempt to withdraw cash from an ATM in St. Louis County, within the Eastern District of Missouri, including from accounts belonging to victims S.R., A.C., A.A., L.B., J.R., and R.H. On or about May 2, 2024, MARINESCU attempted to install a skimming device at a Central Bank ATM in South St. Louis County, within the Eastern District of Missouri. The installation was unsuccessful, but MARINESCU left the unsuccessfully installed skimming device in or on the ATM.

On or about May 3, 2024, NAE removed the unsuccessfully-installed skimming device from the Central Bank ATM in South St. Louis County. On or about May 9, 2024, MARINESCU

covertly placed an illegal skimming device on a Central Bank ATM located at 16415 Village Plaza View Drive in Wildwood, Missouri, within the Eastern District of Missouri. On or about May 11, 2024, NITA utilized multiple stolen account numbers to attempt to withdraw, and did withdraw, cash from an ATM in St. Louis County, within the Eastern District of Missouri, including account numbers belonging to victims D.R. and M.S.

Beginning on or around May 25, 2024, IVAN, DUMITRU, MARINESCU, co-defendant IANUS NITA ("NITA"), VLAICU, and co-defendant NELU NAE ("NAE")—that is, all six Defendants—stayed together at a rented AirBNB in St. Louis County, within the Eastern District of Missouri. The Defendants utilized the AirBNB as a nucleus for their criminal activity and kept at the AirBNB items that they used in connection with their bank fraud scheme, including skimming devices and/or components thereof, skimming device installation tools and/or accessories, a large amount of cash, and numerous gift cards.

On or about May 28, 2024, MARINESCU and NAE covertly placed an illegal skimming device on an ATM at 7-Eleven at 3160 Morganford Road in St. Louis, within the Eastern District of Missouri. On this same day, NITA and VLAICU attempted to remove the skimming device placed by MARINESCU and NAE—but law enforcement had already removed the device.

Also recovered from the rented AirBNB was a laptop computer, recently used by IVAN and DUMITRU, containing hundreds of videos showing customers entering their PIN when using an ATM outfitted with a skimming device. Such videos are generated by cameras installed near skimming devices for the purposes of illegally obtaining this information. IVAN, DUMITRU, MARINESCU, NITA, VLAICU, and NAE successfully defrauded Simmons Bank, Central Bank, and/or the aforementioned victims, and additional victims, through their scheme. In total, the

amount of fraudulent withdrawals perpetrated by the conspirators exceeded $5,000 and involved 10 or more institutional and individual victims.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

### a. Chapter 2 Offense Conduct:

(1) **Base Offense Level**: The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:

The offense involved 10 or more victims, resulting in an offense level increase of 2. U.S.S.G. § 2B1.1(b)(2).

The offense involved the production of an unauthorized or counterfeit access device, resulting in an offense level increase to 12. U.S.S.G. § 2B1.1(b)(11).

### b. Chapter 3 and 4 Adjustments:

6

(1) <u>**Acceptance of Responsibility**</u>: The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) <u>**Adjustment for Certain Zero-Point Offenders**</u>: If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

(3) <u>**Other Adjustments**</u>: The parties agree that the following additional adjustments apply: N/A.

c. <u>**Estimated Total Offense Level**</u>: The parties estimate that the Total Offense Level is 10, unless a two-level reduction under Section 4C1.1(a) applies based on the Court's determination of the defendant's criminal history.

d. <u>**Criminal History**</u>: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**:

a. **Appeal**: The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

(2) **Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

b. **Habeas Corpus**: The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

8

 **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

 **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

 **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

 **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

 **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total

of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    f. **Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

    g. **Forfeiture**: The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 4/10/25 | /s/ Gwendolyn E. Carroll |
| Date | Gwendolyn E. Carroll<br>Assistant United States Attorney |
| | /s/ |
| Date | Venera Isabelle Dumitru<br>Defendant |
| 4.10.25 | /s/ |
| Date | Tara Crane<br>Attorney for Defendant |

13